United States Court of Appeals
For the First Circuit

2018 JUL 23 PM 1:35

RECEIVED
US COURT OF APPEALS
FIRST CIRCUIT
CLERK'S OFFICE

Lisa Biron,
Appellant

V.

United States of America

Case no. ________
D.N.H. Case no. 16-CV-108-PB
12-CR-140-PB

## Application for Certificate of Appealability

Appellant-Movant, Lisa Biron, hereby applies to this Honorable Court for a certificate of appealability ("COA") under 28 U.S.C. § 2353(c) to appeal the October 2, 2017 Judgment of the District of New Hampshire which denied her motion for relief under 28 U.S.C. § 2255, and denied her a COA.

Grounds for Application

Appellant filed a timely motion under § 2255 arguing that trial counsel was ineffective under Strickland v Washington, 466 U.S. 668 (1984). Appellant argued that counsel was ineffective for failing to investigate or present any mental health status evidence, and for failing to interview a single witness. The District Court summarily denied the motion.

In ruling on the motion, the District Court found that trial counsel's failure to investigate or present any mental health evidence did not prejudice the appellant because evidence of Ms. Biron's impaired mental status would not have changed the outcome of the trial. It based its finding on its erroneous understanding of 18 U.S.C. § 2251(a) as a general intent crime.

Further, the court found that because the psychologist that evaluated the appellant post-conviction did not make a diagnosis that she was legally insane there was no evidence to support a defense of insanity.

Procedural Status

After the District Court's denial of her § 2255 Motion, the Appellant notified the court of habeas counsel's deficient performance in abandonning her habeas case. The court treated this notification, which requested, inter alia, that the court reopen judgment to allow the Appellant to bring claims and present evidence that habeas counsel failed to provide (see Appellant's Letter November 1, 2017 on PACER), as a motion under Rule 60(b) and denied said motion.

Consequently, Appellant filed an attorney grievance against habeas counsel which was dismissed. Between the filing of the November letter and the Attorney Grievance, Appellant was taken from Carswell FMC, Texas on January 30, 2018 at 2:00 a.m. on a surprise transfer to Waseca, MN.

After approximately one (1) month, Appellant received her property including most of her legal papers. Appellant was promptly assigned to work in the kitchen which assured that she had minimal access to the law library and no ability to pursue her legal remedies in this case. Despite Appellants several requests to staff (emails available on request) for "legal leave" to work on her case, her requests were denied.

After finally obtaining a new job assignment in June 2018, Appellant filed a Motion for Relief from Judgment under Rule 60(b) to give the District Court the opportunity to address its errant conclusion that the production of child pornography is a general intent crime as this premise effected the integrity of the entire trial as well as its analysis of the motion under § 2255. On July 18, 2018, the District Court denied the mot-

ion without addressing the merits. Appellant has filed a Notice of Appeal to appeal this denial.

Presently, Appellant seeks a COA to appeal the denial of her motion under § 2255 which, despite habeas counsel's deficient performance, presents a strong case that trial counsel was ineffective for failing to present or investigate evidence of Ms. Biron's mental health/status.

Argument in Support of Issuance of COA

In ruling on her motion under § 2255, the District Court found that trial counsel's failure to investigate or present any mental health evidence was not ineffective assistance of counsel based on the erroneous premise that the production of child pornography (18 U.S.C. § 2251(a)) is a general intent crime when it is a specific intent crime that requires proof that Ms. Biron acted to cause R.B. to engage in sexually explicit conduct for the purpose of filming it; and because the psychologist that evaluated Ms. Biron post-conviction did not diagnose her as legally insane when he was not asked to do so, and was not qualified to make such a diagnosis.

Legal Standard

To obtain a COA, Ms. Biron is required to make "a substantial showing of the denial of a Constitutional right." 28 U.S.C. § 2253(c)(2). "The COA inquiry is not coextensive with a merits analysis." Buck v. Davis, 123 S. Ct. 159, ____ (2016). At this stage, Ms. Biron must show only "that jurists of reason could disagree with the district court's resolution of [her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)).

This is a threshold inquiry that does not include "full consideration of the factual or legal bases." Buck, 137 S. Ct. at ____ (quoting Miller-El, 537 U.S. at 336.

I. Evidence of Diminished Capacity is Admissible to Negate the Mens Rea Element of a Specific Intent Crime

In denying her § 2255 Motion, the District Court found that evidence of Ms. Biron's impaired mental status would not have changed the outcome of the trial based on its belief that § 18 U.S.C. § 2251(a) (the production of child pornography) is a general intent crime.[1]

Specifically, the court stated that "Count One was [Ms.] Biron's only crime of specific intent[, and her] seven[2] other crimes were general intent crimes." (Oct. 2017 Order at 14 & 14 n.7)(emphasis added). This finding, of course, precludes the use of mental health status short of insanity as evidence at trial.

In fact, Counts 2 through 7 (18 U.S.C. § 2251(a)) are also specific intent crimes that require the highest level of mens rea and, at a minimum, "but for" causation in order to convict, which makes evidence of Ms. Biron's mental status relevant and admissible to negate the element of mens rea.

"As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute." Jimenez v. Quarterman, 555 U.S. 113, 118 (2009). It is presumed that the"legislature

---

1 That the District Court held this fundamental misunderstanding of the law was only just revealed in its order denying the § 2255 motion. As stated, supra, Ms. Biron filed a motion for relief from judgment under Rule 60(b) to allow the court to address this exceptional circumstance that undermines the integrity of the entire trial. Undaunted, the court summarily denied the motion on 7/18/18 without addressing the merits and Ms. Biron has filed a Notice of Appeal.

2 Count Eight (possession of child pornography) is a general intent crime — the only general intent crime of the eight (8) counts.

says in a statute what it means and means in a statute what it says there." Dodd v. United States, 545 U.S. 353, 357 (2005).

In the present case, the text of the statute upon which Counts 2 through 7 are based is unambiguous. To convict Ms. Biron under 18 U.S.C. § 2251(a), the government must prove, beyond a reasonable doubt, that she "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d] the minor [(R.B.)] to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ." 18 U.S.C. § 2251(a). Clearly, a statute that requires a defendant to cause a minor to engage in certain behavior for the purpose of filming it, requires the highest level of scienter — purposeful intent — and, at a minimum, "but for" causation.

The reasonable jurists in the Fourth Circuit explained: "As the text indicates, § 2251(a) contains a specific intent element: the government must prove that production of a visual depiction was a purpose of engaging the [minor] in the sexually explicit conduct." United States v. Battle, 695 Fed. Appx' 677, 679 (4th Cir. 2017)(citing United States v. Palomino-Coronado, 805 F.3d 127, 130 (4th Cir. 2015). "It is simply not enough to say 'the photo speaks for itself and for the defendant and that is the end of the matter'." Id. (quoting United States v. Crandon, 173 F.3d 122, 129 (3d Cir. 1999)(discussing the "purpose" requirement in the related cross-reference under U.S.S.G. § 2G2.2(c)(1)). "That is, a defendant must engage in[, or engage the minor in,] the sexual activity with the specific intent to produce a visual depiction. It is not sufficient simply to prove that the defendant purposefully took a picture." Palomino-Coronado, 805 F.3d at 131. "It is also necessary for the prosecution to

establish that the defendant caused the minor to engage in [the sexually explicit] conduct." United States v. Gonyer, 761 F.3d 157, 167 (1st Cir. 2014). "The acts with which the defendant caused the minor to engage in sexually explicit conduct — whether they consist of persuation, inducement, enticement, coercion, or some other thing — are as integral a part of the offense as the conduct itself. . . ." Id.

The Merriam Webster Dictionary defines "engage" as "cause to participate." (1997). The Supreme Court has explained that phrases such as "results from", "because of", and "by reason of", import "but for" causation. See United States v. Burrage, 134 S. Ct. 881, 888 (2014). "For the purpose of" is such a phrase.

In interpreting other statutes that contain the phrase "for the purpose of", this Circuit has explained that these words "were included in the statute to define the quality of the required intent . . ." United States v. Sheehy, 541 F.2d 123, 127 (1st Cir. 1976)(quoting United States v. Niro, 338 F.2d 439, 441 (2d Cir. 1964); see also United States v. Hibbs, 356 F. Supp. 820, 823 (E.D. Pa. 1973)(The crimes set forth in 18 U.S.C. § 1010 clearly require "proof of more than a general mens rea. The words . . . 'for the purpose of' . . . are descriptive of that specific mens rea . . .").

Therefore, because Counts 1 through 7 require proof of specific intent and causation to sustain a conviction, evidence of Ms. Biron's diminished capacity by lay witnesses as well as expert witnesses was relevant and admissible to negate mens rea and would almost certainly have changed the outcome of the trial.

Diminished Capacity

In discussing the effect of the Insanity Defense Reform Act, 18

U.S.C. § 17, on the presentation of mental health evidence, the Sixth Circuit explained that an insanity defense applies where the defendant's mental condition "completely absolves him of criminal responsibility regardless of whether or not guilt can be proven[,]" United States v. Kimes, 246 F.3d 800, 805 (6th Cir. 2001), whereas evidence of diminished capacity is used to show that the defendant's "mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime." Id. at 806.

This Circuit has noted that "[t]he reception of evidence of the defendant's abnormal mental condition, totally apart from the defense of insanity, is certainly appropriate whenever that evidence is relevant to the issue of whether he had the mental state which is a necessary element of the crime charged." United States v. Schneider, 111 F.3d 197, 201 (1st Cir. 1997). Likewise, the Sixth Circuit has stated that evidence of diminished capacity is permitted for the purpose of negating the mens rea element of a specific intent crime. Kimes, 246 F.3d at 806.

Evidence Relevant to Intent in Ms. Biron's Case Presented at Trial

In the instant case, the relevant evidence is summarized as follows. As to Counts 2 through 5 (the 3 video clips and photo of R.B. and Kevin Watson in Canada), there is no proof (certainly no proof beyond a reasonable doubt) that the defendant caused the sexually explicit conduct for the purpose of filming it.

Specifically, Watson testified that there was no discussion about setting up cameras to make a video. He testified that he was already in the process of having sex with R.B. and then Ms. Biron picked up the camera and took the videos. (Tr. Trans. Day 2, at 114). He further

testified that Ms. Biron did nothing to make or cause R.B. to have sex, (id. at 92), and that he and R.B. had planned to have sex as they had been having sex over Skype® for months before meeting in person. (Id. at 90-97). Watson stated, "[T]he plan was for Lisa and R.B. to kind of have sex with me, that's their plain[,]" (id. at 95), which is why he met with them. (Id. at 96).

Regarding the still photo of Watson holding his exposed penis, Watson testified that Ms. Biron set up the camera timer to take the picture of the three of them. (Id. at 83-84). Further, Watson testified that there were several other times when Watson and R.B. had sex that were not filmed. (Id. at 81).

Government witness Rob Hardy, likewise,provided no evidence that proved Ms. Biron caused R.B. to engage in sexually explicit activity for the purpose of creating an image of it. Hardy testified that R.B. told him that "she [(R.B.)] went to Canada and she [(R.B.)] lost her virginity and that Lisa recorded it." (Id. at 200-01). He also testified that Ms. Biron told him that they went to Canada for R.B. to lose her virginity and she (Ms. Biron) recorded it. (Id.).

Government witness Lisa Brien testified that R.B. wanted a video made of her first sexual experience for a "keepsake." (Id. at 208).

Government witness Brandon Ore testified that R.B. and Ms. Biron told him that "they had been drinking one night and had been intoxicated and planned to go up there [(to Canada)]." (Id. at 142). Ore stated, "I do not know if there was a plan to make a video." (Id. 159). "They had never said they wanted to produce a video." (Id.).

Regarding Count 6, (the video clip depicting Ore and R.B.), Ore testified that Ms. Biron had encouraged him to have sex with R.B. in the living room. (Id. at 131). On cross examination, however, Ore clarified that R.B. and he were boyfriend and girlfriend and R.B. had complained to Ms. Biron (R.B.'s mother) that Ore did not initiate sex with her and that R.B. always had to initiate it. It was in this context, because of this complaint by R.B., that Ms. Biron encouraged Ore to take the initiative. (Id. at 167). Ore also testified that Ms. Biron took pictures of everything. (Id. at 172). Likewise, government witness and case agent Gibley testified that he recovered from Ms. Biron's house "a large number of pictures, a very large number of pictures." (Id. at 234). Ore explained that the banter that can be heard on the video clip was of a humorous nature. (Id. at 134-35).

Regarding Count 7 (the video of the two women), government witness Michael Biron identified Ms. Biron's and R.B.'s voices on the video, (id. at 242), and identified the living room in the video. (Id. at 253). Scientific evidence presented by the government showed that this video had been deleted from the original device and was automatically backed-up in a file with a 40-character hexadedimal name that was inaccessible until the FBI extracted it using a program called Blacklight. (Id. at 22); 28-29).

Evidence in the Government's Discovery Not Presented or Investigated

In Ms. Biron's case, there were multiple statements in the government's discovery that suggested that Ms. Biron was intoxicated much of the time. Evidence about her intoxication at the time each image was taken should have been investigated and presented by counsel as evidence

of her diminished capacity.

In relation to the video (of the two females) in Count 7, R.B. told the case agent that "[Ms. Biron] was very drunk when it happened and that she passed out shortly after it was filmed." (R.B. Statement, 1/1/13, at 5). In regard to the events that transpired during this time period, R.B. stated that "she thought her mother became addicted to pain medication and that she had a, [sic] 'melt down', [sic] which started the entire process, [sic] 'of everything'." (Id. at 7)(incorrect comma usage in original).

Likewise, there are several statements in Dr. Burns' evaluation report that suggest, at least, a mental state of diminished capacity. Specifically, he opined:

> "[T]his is an anxious individual who is significantly depressed."
> "[She] lived for the moment"
> "[There occurred a] dramatic relapse into substance abuse"
> "[she was] overwhelmed"
> "[T]he stress became too much"
> "[All of this] contributed to a synergistic meltdown"
> "Ms. Biron ceased to function as an autonomous adult"
> "[She] gave up on being an adult and regressed"
> "The [MMPI-II] profile suggests evidence of confused and perhaps disordered thought"
> "[The] degree of impairment is fairly acute"

<u>A Reasonable Jurist Would Likely Find Counsel Was Ineffective</u>

Under its errant understanding of the law, the District Court stated that "The evidence presented against [Ms.] Biron at trial was overwhelming. The jury's verdict was quickly returned and her conviction is well supported by the record." (Oct. Order at 15). But the court's failure to analyse Ms. Biron's claim of ineffective assistance of counsel under a correct understanding of the mens rea element belies the court's conclusion. At best the evidence proved that Ms. Biron knowingly took pictures

and videos of sexually explicit activity. And if that were what § 2251(a) proscribed, the evidence was, indeed, overwhelming. But this is not the crime Congress described in § 2251(a). The court's failure to analyse Ms. Biron's claim of IAC correctly has resulted in the wrongful denial of her § 2255 motion. Certainly, the low bar required for obtaining a COA is easily met.

II. The Insanity Defense

Wholly apart from the District Court's error in apprehending the scienter element and its relation to diminished capacity is its error in discounting Ms. Biron's likelihood of successfully presenting an insanity defense.[3]

In summarily dismissing this claim, the Court noted that "Dr. Burns did not find that [Ms.] Biron suffered from any kind of psychological disorder that may have precluded her from being able to make rational and informed calculations." (Oct. Order at 12). The court, however, misconstrued what trial counsel hired Dr. Burns to do. Dr. Burns was hired <u>post-conviction</u> "to try to understand why these events took place." (Jan. 22, 2013, Engagement Letter from Moir to Burns). In his March 26, 2018 letter to Ms. Biron, Dr. Burns explained that "[he] did not offer a specific diagnosis" because "[he] was not hired for that purpose . . . [and he] did not see how speculating on a diagnosis was all that helpful and might even be something of a distraction." He stated that if he had been asked to investigate a mental health defense, "[he] would probably not have accepted the referral in that [he did] not feel qualified enough to undertake such a specific charge." (Burns Mar. 26, 2018 Letter to Ms. Biron, available on PACER).

3 Title 18 U.S.C. § 17 provides, "It is an affirmative defense...that, at the time of the commission of the acts constituting the offense, the defendant, as

Consequently, the court's reliance on Dr. Burns' failure to diagnose the defendant is misplaced. As it stands, the District Court has found that Ms. Biron was not prejudiced by trial counsel's failure to investigate an insanity defense because trial counsel did not properly investigate an insanity defense.

III. Conclusion

In failing to understand the correct standard of mens rea required to sustain a conviction, the District Court failed to properly determine the prejudice prong of Strickland. Reasonable jurists could have found, under a proper analysis, that both lay witness observation testimony and expert testimony as to Ms. Biron's mental status could have negated the specific intent element of Counts 1 through 7. An expert could have made an official diagnosis of insanity, or, at least, explained to the jury a link or a relationship between, for example, "disordered thought" or "regression to adolescence" and the ability to form the required mens rea in this case. See United States v. Brown, 326 F.3d 1143, 1146 (10th Cir. 2003).

Wherefore, as Ms. Biron has shown that jurists of reason would find it debatable whether her motion states a valid claim of the denial of a constitutional right, she requests this Honorable Court grant her a Certificate of Appealability.

---

a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts."

Respectfully submitted by

7/19/18
Date

Lisa Biron
Lisa Biron # 12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

**Certification**

I hereby swear, under penalty of perjury, that two (2) copies of the foregoing Application have been mailed to the First Circuit Court of Appeals by depositing same in the inmate legal mail system U.S. postage prepaid on this date, and that a copy was mailed to AUSA Seth Aframe.

7/19/18
Date

Lisa Biron
Lisa Biron

Lisa B[illegible]
Federal Correctional Institution
P.O. Box 1731
Waseca, MN 56093

7018 0040 0000 3035 9006

Minneapolis MN 55[illegible]
FRI 20 JUL 2018
PM

USMS
SCREENED

⇔12775-049⇔
First Cir Ct Of Appeals
Clerk of Court
1 Courthouse WAY
Boston, MA 02210-3011
United States

7-19-18

Case: 18-1705 Document: 00117324726 Page: 14 Date Filed: 08/09/2018 Entry ID: 6189790